Good morning, Your Honors. May it please the Court, I'm Mohamed Fakhreddine representing the appellant, Roderick Bone. If I may at this time, I reserve two minutes for rebuttal. Okay. The clock counts down. You see the little digital clock you've got in front of you? Yes. That'll tell you your time, and it goes down. Okay. Thank you, Your Honor. Yes, sir. We're asking this Court to reverse the District Court's ruling that you need to amend the PQ Tile and grant the defendant, I'm sorry, the appellant leave to amend as to all the causes of action. I'm hoping to discuss this morning, first, why this Court has jurisdiction to hear this matter, second, why the District Court's finding that leave to amend would have been futile was conclusory, and finally, why the remaining causes of action were told pursuant to the California Discovery Rule. First, the District Court's order finding that granting the defendant's motion to dismiss as futile is a final order, and is therefore appealable pursuant to 28- I think you're pushing on an open door on that question, so yes, we have jurisdiction. Thank you, Your Honor. In regards to the futility argument- That's the centerpiece of this one, yeah. I'm sorry, Your Honor. It might be that's the centerpiece of the case, yeah. Thank you, Your Honor. First, the law and the facts regarding that issue are simple and they're well settled. The reviewing court, in reviewing whether the trial court's determination that amendment would be futile is conclusory. The reviewing court must reverse and grant leave to amend. In the instant issue, the dispositive argument that the appellant had notice as far back as 2003 and therefore the statute of limitations didn't go pursuant to the California Discovery Rule didn't first appear until the reply brief. The reply brief was filed subsequent to the opposition to the motion to dismiss and subsequent to the second amended complaint. The second amended complaint and the opposition to the motion dismissed only addressed the arguments that were first made in the motion dismissed, which was that the statute began to run no later than May of 2007 and the complaint was filed in October of 2009 and therefore passed to the statute of limitations. So, counsel, how does that matter, though, if the district court based its conclusion on the fact that the claim accrued in 2007? So the 2003 date doesn't matter, does it? It does because if you told the statute, the running of the statute, then it wouldn't start to run on May 2007 when he lost the house or when he was forced to sell the house. It would start when he discovered, when he knew or should have known, that there was discriminatory action on the part of the defendants. So, counsel, what if he had driven by 20 years later? Is it your argument then that the statute of limitations would have been told for 20 years? If that's the first opportunity that he would have had, and it's not the driving by that was the thing that put him on notice. It was actually being able to go in there and to see that the defects that he was being forced to comply with, the regulations or the building codes that he was being forced to rectify, were not enforced on the new owner. And that's the whole premise of what discrimination applies on. It's people similarly situated being treated differently. They both had the property. He was forced to comply with those orders that demand to comply with those, a continuous demand to comply with those, are what caused him to not be able to continue with the building. Why couldn't he have discovered that when the property was sold? Because at that time, he wouldn't know that the new owner wouldn't be forced to comply with it. After he was sold, he didn't have access to it. He would assume that the new owner would have to comply with the same codes that he had to and would have to rectify those same violations. It wasn't until that he saw the city checked off on it or wrote off on it and they weren't forced to comply with it that he knew that they weren't forced to comply with the same regulations that he was forced to comply with. Specifically, how did he discover that? He entered the house and he saw the same defects still existed that he was forced to comply with. How did he know it had been checked off by the city? Because to approve it for sale, it has to be checked off by the city. And it's not checked off by the city until the final inspection. But wasn't it sold when he lost it? It was sold and there were still these purported defects, right? Yes, but it wasn't sold as a completed house. It was sold as still under construction. Let me ask you this. At what point does your client know that statute of limitations is going to be a defense raised by the defendants? I believe he knew when he filed his Second Amendment complaint. Right. So the Second Amendment complaint is the one that the district judge looks at. And it's the one that he says, I look at that and it tells me that we've got a problem under the statute of limitations. And he dismisses. The theory of the district judge is that he knew or should have known long before he drives by the house that's been sold and discovers that there are a lot of defects that still exist that he was told to fix that haven't been fixed. Well, that clearly is a trigger for him. And it's a pretty good indication that there may have been discrimination. I understand that. But the district judge says, well, you complain in your complaint that all along things are happening to you that are not happening to your neighbors. And that there is a disparate treatment between you and your neighbors. And that this is a white neighborhood, so these are white neighbors. And you should have known right then, in the same way that you knew later on the disparate treatment between you and the succeeding owner of your house, that you're being treated unfavorably and that a possible explanation is race. And that's right there on the face of the complaint. So why is the district judge wrong in dismissing the Second Amendment complaint on that ground? The judge was not wrong. The district court wasn't wrong in dismissing the Second Amendment complaint on that basis. It was on the argument, and if you note his order, the dispositive issue was that he should have known in 2003 because of the neighbors. Right. But that wasn't the argument that was put forth in the motion to dismiss. And I don't believe counsel knew at that time that that was going to be an issue. And I understand that at an earlier stage he was supposed to say, the Second Amendment complaint was drafted by counsel. That's the first complaint that was drafted by counsel was the Second Amendment complaint. Is that right? I believe that's correct, Your Honor. But at this point we've got counsel. We've got counsel who knows that there's a statute of limitations problem. And counsel, I mean, the statute of limitations problem just jumps out at you from that complaint. So I'm not sure I need to have a lot of defense from the other side that says, oh, well, you know what? You had a problem as soon as you were complaining about disparate treatment between you and the neighbors. That's not a secret. I believe at the time that they filed the Second Amendment complaint, they didn't believe that the statement regarding the neighbors precluded the California discovery rule because they had additional facts that they knew that weren't written into the complaint. And those additional facts I can't get into because the court denied the motion to supplement the record. Well, you can tell us anyway. It's all right. I think we've seen the Third Amendment complaint, so perhaps we were hasty in denying it. Or maybe I should say it this way. You can't supplement the record, but you may be able to tell us, okay, what would you have said had you known what the district judge was going to do to you? That the neighbors that he was pointing out to the inspector were built 70 years or 65 years before he was building his property. And therefore they were grandfathered in and didn't have to comply with those building codes. And although he was making the statements that these conditions existed on the other property, it wasn't to show that he was being treated different. It was more to show that it's not that dangerous of a condition if the city is okay with it still being these grandfathered-in properties. Did you come back to the district court after the district court dismissed the Second Amendment complaint and say, you know, the first complaint that was drafted by counsel is the Second Amendment complaint. I now see the basis for your dismissal. I want to be able to amend that. The normal custom, I'm not sure it's a flat rule, but the normal custom is that if a district judge dismisses a complaint under 12b-6, it's almost an automatic that the district judge will allow amendment once. Did you go back and say, well, you know, for purposes of practicality, we should treat this as the first complaint because this is the first complaint for which there's been counsel. And if we had a chance, here's what we would say. We would say the neighbors are grandfathered in. Do you ever say anything like that to the district court? I believe trial counsel would have loved that opportunity. They weren't given the opportunity. You can make a motion for reconsideration. That's an issue regarding the trial counsel, but there's two options. Was your office trial counsel? No, Your Honor. Okay. So somebody else drafted that Second Amendment complaint. Yes, Your Honor. And I believe trial counsel was taken by surprise when they weren't granted leave to amend. I believe they were going to appear at oral arguments. They believed oral arguments were going to go forward. They were going to discuss the 2003 notice issue. And when oral arguments were waived by the court, which I believe in itself was an abuse because I think the district court should have realized that the 2003 argument first appeared in the reply. And since the appellant didn't have a chance to address that particular issue, the district court should have at least considered not waiving oral arguments or maybe granting leave to amend to address that issue. And then the court would have had facts that it could decide leave to amend would have been futile. And I say it's conclusory because the court wasn't offered or the plaintiff wasn't offered an opportunity to give the facts. The two cases that are cited by the district court in deciding that amendment would be futile, Klamath Lake in that case, the appellant was given an opportunity in oral arguments to tell the court what the proposed amendments would say. And after hearing that, then decided they were futile. And that dismissal was affirmed because there were facts in front of the court that the reviewing court could see on what basis he decided that. Okay. We've just taken you well over time. Why don't we hear from the other side, but we'll make sure you have a chance to respond. Thank you, Your Honor. Good morning, Your Honors. Thank you to the court. My name is Gabriel. Excuse me. Gabriel Dermer representing the defendants at the lease. And I hope to be very brief. First, to respond to one comment that was raised this morning. The original complaint in the case was drafted by counsel, Attorney Cameron Totten. It's not part of the record because it wasn't relevant. Mr. Totten was relieved. Mr. Bone and Proper filed the first amended complaint, and then counsel came in for the second amended complaint. And different counsel then for the second amended complaint? Correct. Okay. No, I did not see that first amended complaint. I assumed that since the first amended complaint was pro se that the first complaint had been, but that's wrong. Correct. The complaint's not in the record, but the opposition to the plaintiff's ex parte application is in the record, and that's the only reference. It's my declaration, Your Honor. Okay. Now, it's not in the record at all, or it's not in the excerpts of the record? It's not in the excerpts. I'm sorry. It's not in the excerpts. In any event, futility, Justice Rawlinson is correct. The key date is May of 2007. The law is very clear that the statute of limitations commenced running at the time that Mr. Bone knew or should have known of his injury. And whatever you want to say that injury was, it had to have occurred no later than May of 2007 when he was forced to sell the property. He knew about that, as the court suggested today. He was always an African-American man in a white neighborhood. The complaint itself alleges all sorts of harassment, bad conduct, going back for years, doesn't matter which years, but in May 2007, that is when the statute of limitations commenced running, and no later. There's nothing to suggest a tolling or any aha moment later on. The fact is he was damaged in 2007, he alleges. Now, what's the triggering of it in your view in 2007? The injury, the selling of the property at a loss of $1.5 million. I don't get that one. I mean, he's selling the property because he's run out of money. He can't deal with the situation anymore, but he's selling the property based on a lot of other things. The fact that he sold the property doesn't seem to me to give him new knowledge about what's been going on. But that's the end. I believe that there's no substantive 1983 claim in any of that, but if one were to assume there was, the thing that affected him, the damage, the injury, the injurious events, the arrest, the whatever trigger you want to say, it was the selling of the house. Why? Why was the selling of the house the trigger? Because there was nothing after that. There was no conduct. There was no injury after that. Nothing happened to him. Well, we're talking about when he should have been on at least inquiry notice regarding the discriminatory actions. And his argument is that until he realized that the house had been sold by the non-African American owner without having to make all of these improvements that he was required to make, he didn't realize he was the subject of discrimination. So what's your response to that? That argument is belied by the allegations in the complaint that for years he was subject to unfair treatment. He doesn't call it discrimination, but he was assessed fines. He was criminally prosecuted. He was the victim of shifting orders. There was all sorts of allegedly nefarious conduct that he was subject to that culminated in the final sale of that house when he had to give it up for a number of reasons. But what about his he counters that with saying that because the other houses were built before these requirements came into effect, they were grandfathered in, and so he couldn't tell that he was being treated differently, and also that he asked one of the other inspectors, is this guy racist? And he was assured that he wasn't a racist. So what about those assertions? I don't believe they have any merit. Going backwards, asking someone if they're a racist, there was nothing, this is what the district court was right, there was nothing about the sign that said that the city was racist. Not asking him, he asked another inspector who was African-American who worked with him, is this guy racist or is he just hard on everyone? And he said he was not racist. That's correct. But for all those years, in 99, from 99 when he bought the property on, even if the other houses were grandfathered in, he still, in the complaint, in the Third Amendment complaint I'm looking at, he still says that Inspector Kelly told him he stole the property. That has nothing to do with grandfathering or not. That you're going to steal the property and make a lot of money. And that the criminal complaint against him was a sham. And that all these, all these changing requirements for the grading, for the grading requirements, he alleges that even the prosecutor told the trial court, it's enough, I heard you say these things already. He had all these indicia of bad things happening to him. And a reasonable person had to know or should have known at that time going forward that something was up and that by May of 2007, when the whole thing was over because he had to sell the property, that that's when the statute of limitations started running. It belies law and fact to say that it magically sprung up two years later when he walked by and saw that a house was for sale. Well, you don't dispute that the discovery rule generally applies in the context of determining when a statute of limitations has run. Not at all. It's not in this case. Absolutely, there's such a concept of the discovery rule. And that's why the cases that the appellant cites I don't think have any relevance here when Mr. Bone alleges in the complaint that he suffered all this bad conduct and then in 2007 was forced to sell the property at a loss. I think that puts any reasonable person on notice that you have to protect your actions. A claimant can't sit on their rights and wait to file a lawsuit. He had to know at that point that the statute was running and had to prosecute this action. Assume for a moment that the district judge had in front of him a complaint that they would like now to have filed, which is a complaint that says, well, you know, all these other properties, they're grandfathered in. So a lot of the requirements that are being placed on Mr. Bone as trying to build a new property, they simply can't apply because the houses are completed. Let's assume that that's in the complaint. What other things happened to him for which there is no innocent explanation, or at least no obvious innocent explanation, and that would or might have put him on notice that there was some real possibility of racial discrimination? The only complaint, not before the trial court, was the proposed third amended complaint. So that's what I can go on. Yeah, I'm trying to figure out what could he have said. That they're moving targets. Even if you want to say that the other properties are grandfathered in, you would think that the targets given to Mr. Bone would be set, and the moving target suggested something was. No, but the other houses are, I mean, they're not asking for zoning variances or permits or whatever, so they're not going to be subject to targets moving or otherwise. So that doesn't count. Okay, next. Stole the property back. What's that have to do with it? As I interpret that comment, Kelly is saying, well, you know, you got the property back again and you got it for a very good price, and maybe I don't like you. Okay. Inspectors can be a real pain in the neck. I understand. The prosecutor stating enough. You did not even mention these items before. I remember yelling it at the court. The prosecutor is not a defendant here. No, but the defendant was in the presence of the prosecutor and hearing the prosecutor say that these grading requirements are being made up improperly by Kelly. Well, but he's been complaining about that forever. The question is not whether or not he's a hard nose. If he's just a hard nose and a pain in the neck, as many inspectors are, that's not discrimination. Okay, next. Well, Your Honor is suggesting something that I actually believe there was no discrimination, but putting that aside. But what I'm after is what indicia did he have of discriminatory treatment vis-a-vis himself and the neighbors? And I'm waiting. The totality of the conduct that this African-American man, putting the neighbors aside. No, I'm not putting the neighbors to one side. What differences in treatment were there vis-a-vis the neighbors that are not explicable by the grandfathering? He wasn't, he alleges he wasn't permitted to build his house. Either you don't understand my question or you don't have an answer to my question. I think what treatment indicates, perhaps Your Honor could repeat the question. Treatment vis-a-vis the neighbors that is not explained by grandfathering. The neighboring houses, as I now understand they would like to plead, were built a long time ago. And that means then that the neighbors are not coming into the inspector asking for permits or variances or anything else. They're just living there. And he wants to say, well listen, the fact that he treated me really harshly doesn't mean that that was discrimination. It may mean he was just being a jerk. And indeed I was assured of that by my African-American person that I was dealing with in the department. So I keep asking you, okay, what is it that was unfavorable treatment of him vis-a-vis the neighbors that's not explained by the grandfathering defense? I think it's an interesting question because there was, as the court recognized, there was no treatment of the neighbors. So the treatment only went on Mr. Bone. So that means if that's true, the first time he knows that there was differential treatment to someone who's not black is when he figured out, oh, you know, this house was sold to a white person and all the things he was making me do have never been done. But there's nothing in the complaint that alleges and supports that finding. That I understand. There's nothing in the second amendment complaint that does that. And so my question, the hard question for me is whether or not the district judge was too hasty in scheduling and then taking off calendar oral argument and recognizing the history of this case where we apparently had one complaint written by counsel. We had a second complaint written pro se. We have a new complaint written by a new counsel. And now he dismisses without giving new counsel a chance to have oral argument or to say, well, you know, I can take care of that. If that's your problem, I can take care of it with a new complaint. I mean, that's my issue. I think that the district court was correct that any allegation to be alleged in a new complaint would still run up against the same statute of limitations. What about the allegation that says, listen, as vis-a-vis the neighbors, they're all grandfathered in. I think you've just told me. I mean, maybe you don't mean to say that, but I think you've just told me there's no differential treatment vis-a-vis the neighbors that cannot be explained by the grandfathering argument. But there's differential treatment that a reasonable person would know. Mr. Bone was a contractor. He was dealing with other inspectors' contractors. He was subject to criminal complaints, which isn't in the ordinary course, I would suggest, of building a property. He was admittedly subject to all sorts of unfair treatment. And when all that unfair treatment, you know, resulted in the sale of his dream home in the white neighborhood, I think that puts a reasonable person on notice to do, if not to suit, to do some investigation. Well, he did do some investigation, and were I in Mr. Bone's position, one of the ways I might investigate is talk to an inspector in the department with whom I'm getting along, who is himself African-American, and say, you know, I'm having real problems with this guy Kelly. Is it because he's a pain in the neck to everybody, or because I'm black? And the black inspector who works for Kelly says, it's because he's a pain in the neck to everybody. So he investigates. The answer he'd get is he's a pain in the neck to everybody. And then after he sells the property, he sends a note to Mr. Kelly. He gets no response, and at no time does he initiate this lawsuit within the period in which a reasonable person would know or should have known that he was injured. Okay. Counsel, may I ask you, was the complaint against Mr. Kelly and the city, or just the city? Both Mr. Kelly and the city. Okay. Mr. Kelly individually? Yes, Your Honor. Okay. Any further questions from the bench?  Thank you. Thank you, Your Honor. We took you over time, but we'll give you a minute to respond. Okay. Actually, Your Honor, I have no question unless, I have nothing further unless you have questions from the bench. Okay. Thank you very much. Thank you. Thank both sides for their arguments. The case of Bone v. City of Los Angeles et al. is now submitted for decision.
judges: Mills, Fletcher, Rawlinson